**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HARLAN J. FITZHERBERT,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:11-1310** |
| **v.** | : | |
| | | **(NEALON, D.J.)** |
| **MICHAEL J. ASTRUE,** | : | **(MANNION, M.J.)** |
| **Commissioner of Social** | | |
| **Security,** | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §405(g) to determine whether there is substantial evidence to support the Commissioner's decision to deny the plaintiff's claim for Social Security Disability Insurance Benefits, ("D.I.B."), and Supplemental Security Income ("S.S.I.") under Titles II and XVI of the Social Security Act, ("Act"), respectively. 42 U.S.C. §§401-433, 1381-1383f.


# I. PROCEDURAL BACKGROUND

The plaintiff protectively filed applications for D.I.B. and S.S.I. on October 10, 2008, alleging disability since January 29, 2008. (TR. 165). The state agency denied the plaintiff's applications initially on April 15, 2009. (TR. 114-23). The plaintiff requested a hearing on May 5, 2009, and one was held

before an administrative law judge, ("A.L.J."), on April 20, 2010, at which the plaintiff was represented by counsel. (TR. 31-69). In addition to the plaintiff's testimony, the A.L.J. heard the testimony of Gerald Keating, an impartial vocational expert. On May 27, 2010, the A.L.J. issued an unfavorable decision. (TR. 13-30).

The plaintiff requested review of the A.L.J.'s decision. (TR. 9-12).  On May 13, 2011, the Appeals Council denied the request for review. (TR. 1-5). Thus, the A.L.J.'s decision became the final decision of the Commissioner. 42 U.S.C. §405(g). Currently pending is the plaintiff's appeal of the Commissioner's decision, filed on July 13, 2011. (Doc. No. 1).


## II. DISABILITY DETERMINATION PROCESS

A five-step process is required to determine if an applicant is disabled under the Act. The Commissioner must sequentially determine:  (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work, and; (5) whether the applicant's impairment prevents the applicant from doing any other work. 20 C.F.R. §§404.1520, 416.920.

The instant decision was ultimately decided at the fifth step of the process, when the A.L.J. concluded that the plaintiff was not disabled because he could perform a limited range of work activity.

## III. THE A.L.J.'S DECISION

Using the above-outlined procedure, the A.L.J. found that the plaintiff met the non-disability requirements for a period of disability and disability insurance benefits set forth in section 216(i) of the Act through September 30, 2012; the plaintiff had not engaged in substantial gainful activity since January 29, 2008; the plaintiff has the following severe combination of impairments: generalized anxiety disorder, depression, adjustment disorder, obesity, degenerative joint disease in his left knee, a history of a right ankle sprain and mild degenerative joint disease, and asthma; the plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1, Regulations No. 4; the plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§404.1567(a) and 416.967(a) which allows for a sit/stand option at will; he is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling and climbing on ramps and stairs and he must

avoid occupations that require climbing on ladders, ropes and scaffolds and occupations that require pushing and pulling with his left lower extremity to include the operation of pedals; the plaintiff must also avoid concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, vibration, extreme dampness and humidity; the plaintiff is limited to occupations which do not require exposure to hazards such as dangerous machinery and unprotected heights; he is also limited to occupations that require no more than simple, routine tasks, not performed in a fast-paced production environment, involving only simple work-related decision and, in general, relatively few work place changes; the plaintiff was unable to perform any past relevant work; the plaintiff was born on June 11, 1969, and was thirty-eight (38) years old on the alleged disability onset date, which is defined as a younger individual; the plaintiff has a high school education and is able to communicate in English; transferability of job skills was not material to the determination of disability because applying the Medical-Vocational Rules as a framework supported a finding of "not disabled," whether or not the plaintiff has transferable job skills; considering the plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform; and the plaintiff had not been

under a "disability," as defined in the Act from January 29, 2008, the alleged onset date, through the date of the decision. (TR. 18-26).

## IV. EVIDENCE OF RECORD

The plaintiff was thirty-eight (38) years old at the time of his alleged onset date and forty (40) years old at the time of the A.L.J.'s decision, a younger individual under the Act. 20 C.F.R. §§404.1563, 416.963. He has high school education with additional training in heating, air-conditioning and plumbing. (TR. 44).

The plaintiff has alleged disability since January 29, 2008. The medical evidence of record, as summarized by the parties and the A.L.J., establishes that in February 2005, the plaintiff was injured when he was pinned between two vehicles at work (TR. 258). As a result of the accident, the plaintiff was diagnosed with a right ankle sprain and left tibia plateau fracture, (TR. 258), as well as an anterior cruciate ligament, ("ACL"), tear in his left knee, (TR. 277).

Plaintiff treated with Rocco Simmerano, M.D., an orthopedist, on February 23, 2005 for left knee and right foot pain. (TR. 263). Upon examination, Dr. Simmerano noted that the plaintiff had mild swelling around the left leg with full range of motion in the left knee and right ankle. No

5

evidence of fracture or dislocation at either ankle along the left tibia and left knee and left femur was noted upon review of x-rays. (Id.). Given the objective findings, Dr. Simmerano indicated that the plaintiff's subjective complaints of pain were "a little bit out of proportion to the actual physical exam." (Id.).

An MRI of the plaintiff's knee on March 16, 2005 exhibited a medial meniscal tear with partial dorsal tibia plateau depressed fracture and ACL strain. (TR. 279-80).

Nerve condition studies conducted in April 2005 exhibited no evidence of neuropathy or other abnormal findings. (TR. 265-66).

In March and April 2005, Dr. Simmerano continued to conservatively manage the plaintiff's medication and prescribed physical therapy, (TR. 255-63).

On December 31, 2007, plaintiff treated with Arthur H. Tiger, M.D. (TR. 277-78). Dr. Tiger noted that the plaintiff had two past left knee surgeries in 2005 and 2007, respectively, as well as a debridement of an osteochondral lesion of the talar dome in 2005. Upon examination, Dr. Tiger noted right ankle swelling and loss of active and passive dorsiflexion. Moderate crepitation was noted within the right ankle joint on range of motion testing. The left knee showed fluid in the suprapatellar pouch, positive results for a grinding and compression test, and swelling on either side of the patellar

6

tendon which was indicative of the residuals of chronic synovitis. Crepitation was noted over the patellar tendon, as well as accompanying all range of motion in the left knee. The left knee was noted to lack the last 20% of flexion actively and passively. Dr. Tiger opined that the plaintiff had the residuals of an internal derangement of the left knee with a lateral tibial plateau fracture as well as a probable ACL tear. He estimated that the plaintiff had a disability of 65% of the left leg and 50% of the foot. (TR. 278).

On March 27, 2008, Frank Romascavage, D.O., one of the plaintiff's treating physicians, opined that the plaintiff was temporarily disabled from January 28, 2008 to January 28, 2009, as a result of anxiety and depressive disorder. (TR. 284). Treating records from Dr. Romascavage indicate that, during the period from 2001 through 2008, he only treated the plaintiff for such conditions as rib discomfort, colds, coughs, and foot discomfort. (TR. 281-85).

On October 18, 2008, the plaintiff underwent a psychiatric evaluation at NHS Human Services Outpatient Clinic. (TR. 287-89). Treatment notes indicate that, upon examination, plaintiff's speech was coherent, his affect appropriate, his behavior cooperative, and he exhibited fair insight, judgment and impulse control. (Tr. 288).

On a mental impairment questionnaire dated November 7, 2008, by

NHS, the plaintiff was rated from "fair" to "good" or "very good" with respect to aptitude skills needed to do unskilled work; "good" in his abilities and aptitudes needed to do semiskilled and skilled work; and "good" or "fair" in his abilities and aptitudes needed to do particular types of jobs. (TR. 376-78). The evaluation concluded that the plaintiff's impairments or treatments would cause him to miss work "frequently." (TR. 376). At that time, the plaintiff was assessed a GAF of 45[1], (TR. 373), with an indication that he has poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance and social withdrawal or isolation, suicidal ideation, decreased energy and generalized anxiety. (TR. 374).

On December 22, 2008, an employability reassessment form was completed by Martha Turnberg, M.D., of NHS. Dr. Turnberg opined that the plaintiff was temporarily disabled from December 22, 2008, through May 22, 2009, due to depression. Dr. Turnberg indicated that her assessment was based upon an interview with the plaintiff that same day, as well as clinical history. (TR. 292).

On February 4, 2009, the plaintiff treated with David S. Ross, M.D. (TR.

---

[1]A G.A.F. score between 41-50 denotes "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders DSM-IV-R at 34 (4th ed. 2000).

293-303). At that time, the plaintiff complained of left knee instability, as well as left leg and right ankle pain, but reported taking no medication for pain. (TR. 294-96). Upon examination, Dr. Ross noted that there was some crepitus, with only a slight decrease in the range of motion of the left knee. (TR. 294). The plaintiff's right ankle examination was noted to be essentially negative with only some tenderness in the area being noted. (Id.). The plaintiff was given the first of what was supposed to be a series of Euflexxa injections in the left knee; however, the plaintiff never returned for the remaining injections. (TR. 296). Based upon his objective findings, Dr. Ross indicated that the plaintiff's subjective complaints were "out of proportion to what is expected." (TR. 296).

X-rays from February 6, 2009 showed mild degenerative joint disease in the left knee. (TR. 298).

On February 27, 2009, the plaintiff underwent a consultative examination with Joyce Vrabec, D.O. (TR. 304-11). Plaintiff reported that he did not take any anti-inflammatory or pain medications for his knee and ankle pain, and that his condition was "fine" in the summer months. (TR. 305, 306, 308). Upon examination, Dr. Vrabec noted that the plaintiff was able to climb on and off the examination table and to get in and out of the chair. (TR. 306). No evidence of effusion was noted. The plaintiff was found to have full range

of motion and strength in his left knee and right ankle. (Tr. 306-07). It was noted that the plaintiff had a history of asthma which was well-controlled with medication. (TR. 308). Dr. Vrabec's notes indicate a history of depression by the plaintiff; however, she noted no overt signs of anxiety or depression during the visit. (Id.). The plaintiff was noted to show appropriate manner of behavior, hygiene, and dress. (TR. 305). Dr. Vrabec completed a questionnaire in which she indicated that the plaintiff would be restricted to occasionally carrying no more than twenty-five pounds; he did not have any sitting limitations; he could stand and/or walk for one hour or less in an eight hour workday; and was limited in his pushing and pulling ability in his lower extremities. (TR. 310).

On March 17, 2009, Vinayant Shah, M.D., a state agency physician, reviewed the plaintiff's medical records and opined that the plaintiff could lift and/or carry twenty pounds occasionally, ten pounds frequently, could stand and/or walk about six hours in an eight hour workday, could sit about six hours in an eight hour workday, and had unlimited push/pull ability. (TR. 312-18). No other exertional limitations were noted. (Id.).

On April 4, 2009, the plaintiff treated with Sara Camaerei, Psy.D., who indicated that the plaintiff's mood and affect were appropriate. (TR. 322-24). No formal thought disorder was noted and plaintiff's memory, insight and judgment were appropriate. It was noted that the plaintiff had been prescribed

Celexa and various pain medications to treat chronic pain in his right foot and knee. (TR. 323). Plaintiff was diagnosed with major depressive disorder without psychotic features, anxiety disorder, chronic pain in the left knee and right foot, asthma, occupational problems, and problems with the social environment, and assessed a GAF of 50. (TR. 323-24). A questionnaire indicated that the plaintiff had no more than a slight restriction in his ability to understand, remember and carry out short, simple instructions and to interact appropriately with the public. (TR. 320-21). The plaintiff was found to be no more than moderately restricted in his ability to make judgments on simple work-related decisions, to interact appropriately with supervisors and co-workers, and to respond appropriately to work pressures in a usual work setting and to changes in a routine work setting. (Id.).

On April 15, 2009, Joseph A. Barrett, Ph.D., a state agency psychiatrist, reviewed the medical evidence of record and opined that plaintiff had depressive disorder and adjustment disorder. (TR. 337-49). The plaintiff was found to be mildly restricted in his activities of daily living; moderately restricted in social functioning and maintaining concentration, persistence or pace; and had experienced one or two episodes of decompensation, (TR. 347). From the record, Dr. Barrett indicated that the plaintiff was oriented to person, place and time, and was clear, coherent and logical. (TR. 349).

On February 9, 2010, a second employability re-assessment form was completed by NHS on which it was indicated that the plaintiff was temporarily disabled from 2005 through an indefinite period of time due to a primary diagnosis of depression and a secondary diagnosis of chronic pain. (TR. 353-54). A medical progress note from that same day indicates that the plaintiff had an appropriate appearance, cooperative behavior, normal speech, depressed mood, full range of affect, and goal directed thought. (TR. 368).

Aside from the medical records, the plaintiff subjectively complains of severe pain and swelling in his knee and ankle. (TR. 277, 322, 273, 294). He further complains of severe depressive symptoms, including sadness, episodes of crying, lack of energy, lack of motivation, lack of concentration, severe anxiety, social isolation and insomnia. (TR. 322). The plaintiff reported that, as a result of his conditions, he has poor hygiene and has difficulty completing tasks at home. (TR. 322). The plaintiff has presented complaints that he has difficulty walking and dressing himself. The plaintiff has indicated that he has numbness and tingling and that he has cold and movement intolerance. (TR. 277-78).

The plaintiff presented his subjective complaints at the hearing before the A.L.J. In doing so, the plaintiff represented that his pain is at a level of 100 on a scale of one to ten and is so severe that he thinks about killing himself.

(TR. 49). The plaintiff testified that he took Percocet for migraines and Naproxen for his ankle and knee pain. (TR. 51). At the time of his hearing, the plaintiff was taking Seroquel, Clonidine, and Wellbutrin. (TR. 54). As a result of taking these medications, the plaintiff testified that he feels numb and dizzy. (TR. 54).

With respect to functional limitations, the plaintiff testified that he can walk fifty yards before his knee and ankle begin to hurt. (TR. 49-50). The plaintiff testified that he can stand or sit for about an hour or two before his ankle and knee begin to swell. (TR. 49-50). When this happens, the plaintiff indicated that he cannot dress himself. (TR. 50-51). The plaintiff testified that he is unable to do household chores. (TR. 50-51).

Considering the evidence of record, the A.L.J. presented several hypotheticals to the vocational expert. The vocational expert was asked to assume that the individual's residual functional capacity would permit him to perform work at the sedentary exertional level with the option to sit or stand. (TR. 62). The vocational expert was not to take into account the limitation which would require no more than occasional interaction with supervisors, co-workers and members of the general public (TR. 61, 62-63). The vocational expert testified that the hypothetical individual would be capable of working as a surveillance system monitor, telephone receptionist, and telemarketer.

(TR. 63).

The A.L.J. then asked the vocational expert to assume that the individual would be absent at least three to four days per month due to pain and swelling of his lower-left extremity, plus fatigue as a side effect of depression and pain medications, and that the individual would be off-task more than thirty percent of the workday. In response to this hypothetical, the vocational expert testified that the individual could not perform any competitive work in the local, state or national economy. (TR. 64).

Upon questioning by plaintiff's counsel as to whether any of the jobs that he suggested would be available if the individual would not respond appropriately to work pressures in the usual work setting, the vocational expert responded that none of the jobs that he suggested would be available. (TR. 66).

## V.   DISCUSSION

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3rd Cir. 1988); Mason v. Shalala, 994 F.2d 1058 (3rd Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

In his appeal, the plaintiff initially argues that the A.L.J. erred in giving "little weight" to the opinions of his treating physicians, Dr. Turnberg and Dr. Romascavage, who opined that he is temporarily disabled. (Doc. No. 10, pp.

13-16).

In order to be entitled controlling weight, a treating physician's opinion must be "well supported by medically acceptable clinical and laboratory diagnostic techniques" and must not be "inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2) (2000).

In Jones v. Sullivan, 954 F.2d 125 (3d Cir. 1991), the court held that, in the absence of contradictory medical evidence, an administrative law judge must accept the medical judgment of a treating physician. However, the court also noted that these opinions need not be accepted where they are conclusory and unsupported by the medical evidence or where the opinions are contradicted by the opinions of other physicians, including state agency physicians, who reviewed the findings of the treating physicians and concluded that these findings do not reveal a condition that would preclude gainful employment.

In Williams v. Sullivan, 970 F.2d 1178 (3d Cir. 1992), the court noted that while the administrative law judge may not base a decision upon his own interpretations of the significance of medical data, this does not prevent the administrative law judge from weighing medical reports against internal contradiction and other contradictory medical evidence.

Here, with respect to the opinion of Dr. Turnberg, the plaintiff argues that A.L.J. erred in giving "little weight" to her opinion and her finding that he is temporarily disabled beginning in 2005 and lasting for an indefinite period of time. The plaintiff argues that Dr. Turnberg based her opinion on a primary diagnosis of depression and a secondary diagnosis of chronic pain and that Dr. Turnberg sees the plaintiff once per week for therapy. (TR. 53).

The Commissioner contends that Dr. Turnberg's opinion that plaintiff is temporarily disabled is not entitled to any greater weight because it was rendered after only one evaluation on a check-box welfare form, on which she indicates a temporary disability beginning in December 2008, when she completed the form, through May of 2009, a period of five months. Although the plaintiff argues that the Commissioner has failed to cite to anything which suggests that such check-box assessments are to be accorded any less weight than any other method of assessments, form reports in which it is merely required that a box be checked or a blank be filled in is "weak evidence" at best.  Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1992). Where these types of reports are unsupported by thorough written reports, their reliability is "suspect". Id. In this case, the opinion of disability on the form is inconsistent with the psychiatric evaluation of Dr. Turnberg completed in October 2008 which indicates that the plaintiff spoke coherently, had an

appropriate affect, behaved cooperatively, and exhibited fair insight, judgment and impulse control. In addition, it is contrary to the opinions of the consulting psychologist, (TR. 22-23, 320-23), and state agency psychologist, (TR. 347-49), who determined that the plaintiff did not have a disabling mental impairment. Therefore, the weight accorded this opinion by the A.L.J. is supported by substantial evidence in the record.

Concerning the opinions of Dr. Romascavage, the plaintiff argues that the A.L.J. erred in failing to give them any significant weight based on a finding that the plaintiff's daily living activities have not been limited. The plaintiff argues that, to the contrary, his complaints establish the opposite and that NHS found that his daily functions were very limited.

With respect to this argument, it is noted that, although Dr. Romascavage opined that the plaintiff was temporarily disabled due to depression, the record reflects that Dr. Romascavage never treated the plaintiff for any such condition. In fact, the plaintiff was treated by Dr. Romascavage for such ailments as colds and coughs. (TR. 281). In addition, Dr. Romascavage's records do not identify what the plaintiff's limitations are and whether those limitations would preclude all forms of work activity. As such, the A.L.J. was entitled to afford his opinion limited weight.

The plaintiff next argues that the A.L.J. erred with respect to her findings

on the plaintiff's subjective complaints of limitations. (Doc. No. 10, pp. 16-22).

When considering subjective complaints, the regulations require objective clinical signs and laboratory findings which demonstrate the existence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. §404.1529(b), 416.929(b). If the medical evidence establishes the existence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, the regulations then require the A.L.J. to evaluate their intensity and persistence and their effect on the claimant's capacity to work in light of the entire record. 20 C.F.R. §§404.1529(c)(1)-(3), 416.929(c)(1)-(3). The Third Circuit has indicated that "[t]his obviously requires the administrative law judge to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. Hartranft v. Apfel, 181, F.3d 358, 362 (3d Cir. 1999). Where the A.L.J.'s credibility findings are supported by substantial evidence, those findings will not be disturbed on appeal. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).

Here, the A.L.J. found that the plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but determined that the plaintiff's statements regarding the intensity, duration

19

and limiting effects of his symptoms were not entirely credible. (TR. 24). This finding is supported by substantial evidence in the record. Specifically, although the plaintiff testified that he was taking pain medication at the time of his hearing for his conditions, the record reflects inconsistencies with that testimony. Specifically, Drs. Ross and Vrabec both indicated that the plaintiff reported not taking any pain medication for his knee and ankle conditions upon examination. (TR. 24, 294-96, 305).

Further, despite his complaints of debilitating pain, Drs. Simmerano and Ross indicated that his subjective complaints were out of proportion to what was found upon examination and objective testing. (TR. 296, 263).

With respect to his claims of disabling mental impairments, mental evaluations of the plaintiff consistently indicated that, while he clearly has mental health issues, they are not disabling. Specifically, Dr. Turnberg, the plaintiff's treating psychologist, indicated that the plaintiff spoke coherently, had an appropriate affect, behaved cooperatively, and exhibited fair insight, judgment, and impulse control. (TR. 288). Dr. Camaerei also indicated that the plaintiff's mood and affect were appropriate; there was no evidence of any formal thought disorder; and the plaintiff's memory, insight, and judgment were appropriate. (TR. 22-23, 323).

In addition, although the plaintiff argues that the A.L.J. erred in placing

20

undue weight on her observations of the plaintiff during the hearing, this is a factor to be considered by the A.L.J. In doing so, the A.L.J. was justified in questioning the plaintiff's complaints that he was completely disabled by his conditions given his appearance and demeanor at the hearing. Since the A.L.J. considered this factor in conjunction with the other medical evidence of record, and did not solely rely on this, the A.L.J.'s decision is supported by substantial evidence.

Finally, the plaintiff argues that the A.L.J. erred in failing to include his limitations in the hypothetical question posed to the Vocational Expert. (Doc. No. 10, pp. 22-25). Specifically, the plaintiff argues that the A.L.J. failed to include his inability to respond appropriately to work pressures in a usual work setting.

Residual functional capacity refers to what a plaintiff can do despite his limitations. 20 C.F.R. §§404.1545(a), 416.945(a). It is the plaintiff's burden to present evidence showing how his alleged impairments limit his ability to work. See 20 C.F.R. §§404.1512(c), 416.912(c). In determining the plaintiff's residual functional capacity, the A.L.J. must consider all relevant evidence, including the medical evidence of record and the plaintiff's subjective complaints. 20 C.F.R. §§404.1545(a), 416.945(a) . The final responsibility for determining a plaintiff's residual functional capacity is reserved for the

Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §§404.1527(e)(2), (3), 416.927(e)(2). At the hearing level, the responsibility for determining a plaintiff's residual functional capacity is reserved for the A.L.J. 20 C.F.R. §§404.1546, 416.946.

Where a vocational expert's testimony is in response to a hypothetical that fairly sets forth every credible limitation established by the evidence of record, that testimony can be relied upon as substantial evidence supporting the ALJ's conclusion that the plaintiff is not totally disabled. Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999); Chrupcala v. Heckler, 829 F.2d 1269 (3d Cir. 1987); Rotshteyn v. Massanari, 2001 WL 912418 (E.D.Pa.).

Here, nothing in the record indicates that plaintiff has an "inability" to respond appropriately to work pressures. The record cited to by the plaintiff indicates only that the plaintiff has a "moderate" restriction in responding appropriately to work pressures in a usual setting. (TR. 320). Other indications in the record, including from the plaintiff's treating provider, indicates that he was rated as either "very good," "good," or "fair," with respect to aptitude skills needed to do unskilled work; "good" in his abilities and aptitudes needed to do semiskilled and skilled work; and "good" or "fair" in his abilities and aptitudes needed to do particular types of jobs, with no indication that the plaintiff would have an inability to respond to work pressures. (TR.

22

376-78). Since the record does not support the limitation posed by the plaintiff, the A.L.J. need not have posed that limitation to the vocational expert, and the testimony provided by the vocational expert in response to the A.L.J.'s hypothetical is substantial evidence supporting the A.L.J.'s decision.

## VI.    RECOMMENDATION

Based on the foregoing, **IT IS RECOMMENDED THAT:**

the plaintiff's appeal from the decision of the Commissioner of Social Security be **DENIED**.


s/  *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**


**Date:**  August 27, 2012

O:\shared\REPORTS\2011 Reports\11-1310-01.wpd

23