IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARLAN J. FITZHERBERT, <br> Plaintiff, | : <br> : |
| v. | : CIVIL ACTION NO. 3:11-1310 <br> : <br> : (JUDGE NEALON) |
| MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br> Defendant | : <br> : (MAGISTRATE JUDGE MANNION) <br> : |

## MEMORANDUM

On July 20, 2011, Plaintiff, Harlan J. Fitzherbert, filed a complaint seeking review of the Commissioner of Social Security Administration's ("Commissioner") dismissal of his application for social security disability insurance benefits and supplemental security income. (Doc. 1). A Report was issued by United States Magistrate Judge Malachy E. Mannion on August 27, 2012, recommending that Fitzherbert's appeal be denied. (Doc. 15). Fitzherbert filed objections to the Report and Recommendation ("R&R") on September 11, 2012 and the Government filed a response on September 19, 2012. (Docs. 16, 17). The matter is ripe for resolution, and for the reasons set forth below, the R&R will be adopted and the appeal will be denied.

### Standard of Review

When objections to a report and recommendation have been filed, the court must make a de novo determination of those portions of the report to which specific objections are made. Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989); Goney v. Clark, 749 F.2d 5, 6-7 (3d Cir. 1984). The court "may accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1)(C); Local Rule 72.3. Further,

the court may, in the exercise of sound judicial discretion, rely on the magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980); Goney, 749 F.2d at 7. When no objections are made to a report, the district court is not statutorily required to review the magistrate judge's factual or legal conclusions under a de novo or any other standard. Thomas v. Arn, 474 U.S. 140, 149, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Peter v. Wynder, 2008 U.S. Dist. LEXIS 57782, *4-5 (M.D. Pa. 2008) (Jones, J.).

**Background**

Fitzherbert filed an application for disability insurance benefits and supplemental security income on October 10, 2008, alleging disability since January 29, 2008 due to arthritis, depression, insomnia, and asthma. (Tr. 165, 182). His date last insured is December 31, 2011. (Tr. 166). After his request for benefits was denied at the initial level, Fitzherbert filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 92-117). A hearing was held on April 20, 2010, which resulted in a decision, unfavorable to Fitzherbert, being issued on May 27, 2010. (Tr. 16-69). Fitzherbert then requested review by the Appeals Council, which denied review, making the decision of the ALJ final. (Tr. 1-5, 9-15). The instant appeal followed. (Doc. 1).

On October 24, 2011, Fitzherbert filed a brief in support of his appeal. (Doc. 10). The Government filed an opposing brief on December 28, 2011, and Fitzherbert filed a reply brief on January 5, 2012. (Docs. 13, 14). The Magistrate Judge issued a Report on August 27, 2012, recommending that the appeal be denied. (Doc. 15). Fitzherbert filed timely objections to the

R&R on September 11, 2012 and the Government filed a response on September 19, 2012. (Docs. 16, 17).

**Disability Determination Process**

The Social Security Regulations establish a five-step evaluation process which is used to determine if a person is entitled to disability benefits. See 20 C.F.R. § 404.1520. If at any step in the process the Commissioner finds that a plaintiff is disabled or not disabled, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920. The steps in the process are as follows: (1) Is the individual engaging in substantial gainful activity? (2) Does the individual have a severe impairment? (3) Does the individual have an impairment which meets or equals the listing of impairments as set forth in 20 C.F.R. part 404, subpart P, appendix 1? (4) Does the individual retain the residual functional capacity ("RFC") to engage in his past relevant work? and (5) If an individual does not have the capacity to engage in his past work, does he retain the capacity to perform jobs which exist in significant numbers in the national economy? See Social Security Ruling 86-8; 20 C.F.R. § 404.1520.

The disability determination involves shifting burdens of proof. Mason v. Shalala, 994 F.2d 1058, 1063-64 (3d Cir. 1993). The initial burden rests with the claimant to demonstrate that he is unable to engage in his past relevant work. Id. at 1064. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

## Discussion

At the ALJ hearing on April 20, 2010, Fitzherbert, represented by counsel, testified, and a vocational expert testified. (Tr. 31-69). After the hearing, the ALJ issued a decision and concluded that Fitzherbert had not been under a disability at any time since he filed his disability application. (Tr. 16-30). At step one of the sequential evaluation process, the ALJ found that Fitzherbert had not engaged in substantial gainful activity since his alleged onset date. (Tr. 18). At step two, the ALJ found that Fitzherbert suffered from the severe impairments of generalized anxiety disorder, depression, adjustment disorder, obesity, degenerative joint disease in his left knee, a history of right ankle sprain, mild degenerative joint disease, and asthma. (Tr. 18-19). The ALJ then determined, at step three, that Fitzherbert's impairments do not meet or equal a listed impairment, either singly or in combination. (Tr. 15-16). The ALJ proceeded to step four and found that Fitzherbert is unable to perform any of his past relevant work. (Tr. 24). At step five, the ALJ determined that Fitzherbert is capable of performing a significant number of jobs in the national economy. (Tr. 25-26). The ALJ therefore concluded that Fitzherbert has not been under a disability at any time since his alleged onset date. (Tr. 26).

Fitzherbert then sought review of the ALJ's decision, however the Appeals Council denied review and he appealed to this Court. (Tr. 1-5). In the Report and Recommendation, the Magistrate Judge determined that there is substantial evidence supporting the ALJ's decision. (Doc. 15).

In his objections, Fitzherbert argues that the Magistrate Judge erred in rejecting the opinions of the treating and examining doctors regarding his mental impairments, erred in finding that the ALJ's credibility assessment was supported by substantial evidence, and erred in

failing to consider the vocational expert's opinion that he would not be able to perform any work. (Doc. 16).

In response to Fitzherbert's objections, Government counsel states that the parties addressed these same arguments in their initial briefs. (Doc. 17, pg. 1; Docs. 10, 13, 14). A thorough review of Fitzherbert's objections reveals that he has restated his prior arguments; thus, Fitzherbert has waived the right to de novo review. (Docs. 10, 14, 16). See Hutson v. Vaughn, 2004 WL 717178 (E.D. Pa. 2004) (the court overruled the petitioner's objections after determining that the objections simply restated his prior contentions and that the Magistrate Judge properly reviewed the arguments in the Report and Recommendation); see also Riley v. Barnhart, 2010 WL 1186314 (E.D. Pa. 2010). Regardless, an independent examination was conducted.

Fitzherbert first argues that the Magistrate Judge inappropriately rejected the opinions of his treating physicians, Dr. Turnberg and Dr. Romascavage, in favor of the opinion of one-time examining psychologist, Dr. Camaerei. (Doc. 16, pgs. 2-6). Government counsel argues that the Magistrate Judge correctly upheld the ALJ's evaluation of the medical opinions. (Doc. 17).

The ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). The better an explanation a source provides for an opinion, particularly through medical signs and laboratory findings, the more weight the ALJ will give that opinion. 20 C.F.R. § 404.1527(d)(3). While treating physicians' opinions may be given more weight, there must be relevant evidence to support the opinion. 20 C.F.R. § 404.1527(d). Automatic adoption of the opinion of the treating physician is not required. See Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). In addition, the issue of disability determination is reserved to the Commissioner. 20

C.F.R. § 416.927(e)(3).

Regarding Dr. Turnberg's opinion, Government counsel notes that she only treated Fitzherbert once before filling out the check-box, welfare form. (Doc. 17, pgs. 3-4). Fitzherbert treated at Northwestern Human Services, Inc., on October 18, 2008, and was diagnosed with depression, NOS, alcohol misuse and a global assessment of functioning ("GAF") score of 45[1] was assessed. (Tr. 287-89). Dr. Turnberg then completed an Employability Re-Assessment Form on December 22, 2008. (Tr. 291-92). Dr. Turnberg diagnosed depression, NOS, and stated that Fitzherbert was temporarily disabled due to depression, beginning on that date, and lasting five months. (Doc. 17, pg. 3) (Tr. 292). The Government argues that Dr. Turnberg provided no explanation for her diagnosis and that Dr. Turnberg found that Fitzherbert had an appropriate affect, behaved cooperatively, and exhibited fair insight, judgment, and impulse control. (Doc. 17, pgs. 3-4) (Tr. 288). The ALJ gave little weight to this opinion because Fitzherbert's disability was not expected to last for a continuous period of twelve consecutive months, the GAF scores took into account his history of alcohol misuse, and they were inconsistent with the mental examination findings which were within normal limits. (Tr. 21-22). The Magistrate Judge noted that check-box, form reports are "weak evidence" at best and that Dr. Turnberg's opinion on the check-box form is inconsistent with the psychiatric evaluation she completed in 2008. (Doc. 15, pgs. 17-18) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1992)).

The Magistrate Judge also stated that the ALJ appropriately afforded little weight to Dr.

---

1. A GAF score between 41 and 50 indicates "serious symptoms OR any serious impairment in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders 3–32 (4th ed. 1994).

Romascavage's opinion. (Doc. 15). Magistrate Judge Mannion noted that although Dr. Romascavage found that Fitzherbert was temporarily disabled due to depression, he only treated Fitzherbert for ailments such as coughs and colds. (Doc. 15, pg. 18). Government counsel argues that the ALJ thoroughly considered Dr. Romascavage's opinion before according it little weight. (Doc. 17). The Government also states that Dr. Romascavage never treated Fitzherbert for depression, therefore his opinion regarding Fitzherbert's disability from depression is beyond the scope of his treatment and experience. (Doc. 17).

The Government argues that the ALJ appropriately gave greater weight to the opinion of Dr. Barrett, the state-agency psychiatrist. (Doc. 17, pg. 4). On April 15, 2009, Dr. Barrett completed a Psychiatric Review Technique Form and Mental RFC Assessment. (Tr. 337-52). Dr. Barrett diagnosed depressive disorder, NOS, adjustment disorder and a substance addiction disorder. (Tr. 337-45). Dr. Barrett reviewed the medical evidence and noted that at an examination with Dr. Vrabec in February 2009, there were no overt signs of anxiety or depression and Fitzherbert's symptoms seemed well-controlled with medications. (Tr. 349). At an examination with Dr. Camaerei in March 2009, Fitzherbert was polite, cooperative, alert, tearful at times, clear, coherent and logical, and his memory, insight, and judgment were appropriate. (Tr. 349). Government counsel argues that Dr. Barrett's opinion is consistent with the overall medical evidence of record. (Doc. 17, pg. 4). Upon review, substantial evidence supports the ALJ's evaluation of the opinions of Dr. Romascavage and Dr. Turnberg.

Fitzherbert next argues that the Magistrate Judge erred in determining that substantial evidence supports the ALJ's evaluation of his subjective complaints. (Doc. 15, pgs. 18-21). Fitzherbert argues that his subjective complaints are supported by the evidence of record. (Doc.

16, pgs. 7-9). The Government states that the ALJ's credibility analysis was proper and that the ALJ accounted for Fitzherbert's complaints by limiting him to sedentary work with limitations. (Doc. 17, pg. 8). Government counsel also notes that, although Fitzherbert stated he was taking pain medication, evidence reveals that he was not taking any such medication. (Doc. 17, pg. 8).

"'[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, 2000 WL 288246 (E.D. Pa. 2000). The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. First, symptoms, such as pain, shortness of breath, fatigue, et cetera, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment that results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements: "In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on

the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p.

After review, it is determined that the ALJ considered Fitzherbert's subjective complaints as well as the medical evidence of record and ultimately concluded that he was not totally disabled. It is the ALJ's responsibility to weigh the subjective complaints against the medical evidence of record, and the ALJ did not reject outright Fitzherbert's testimony nor the existence of impairments, but found the severity of them to be exaggerated. (Tr. 23-24).

The ALJ observed and heard Fitzherbert testify; therefore, the ALJ is the one best suited to assess his credibility. The ALJ stated that Fitzherbert's statements concerning the intensity, duration and limiting effects of his symptoms are not entirely credible. (Tr. 23-24). The ALJ noted that diagnostic studies revealed only minimal findings, physical examinations were relatively within normal limits, Fitzherbert was not prescribed narcotic pain medications, other than two weeks before the hearing he was prescribed medication for severe headaches, he had no obvious difficulty walking at the hearing and he was able to sit through the hearing. (Tr. 24). The ALJ ultimately determined that Fitzherbert is capable of performing sedentary work with a sit/ stand option at will. (Tr. 24). The ALJ accounted for Fitzherbert's limitations and found that he could do no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling and climbing on ramps and stairs, and he cannot climb on ladders, ropes and scaffolds, cannot push and pull with his left lower extremity (including operating pedals), he

9

must avoid concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, vibration, extreme dampness and humidity, he must avoid dangerous machinery and unprotected heights, he is limited to work that requires no more than simple, routine tasks, not performed in a fast-paced production environment, with only simple work-related decisions and relatively few work place changes. (Tr. 24). By evaluating the extent to which Fitzherbert's subjective complaints were reasonably consistent with the objective medical evidence, the credibility analysis was proper. See Blue Ridge Erectors v. Occupational Safety & Health Review Com'n, 261 Fed. Appx. 408, 410 (3d Cir. 2008) (quoting St. George Warehouse, Inc. v. NLRB, 420 F.3d 294, 298 (3d Cir. 2005) ("[T]he ALJ's credibility determinations should not be reversed unless inherently incredible or patently unreasonable.")). Therefore, the credibility analysis was proper and this assessment is supported by substantial evidence and will not be disturbed on appeal.

Fitzherbert next argues that the Magistrate Judge erred in finding that he is capable of performing work in the national economy. (Doc. 16, pgs. 6-7). The vocational expert testified that if an individual with Fitzherbert's same limitations missed work at least three to four days per month due to those limitations, such an individual could not perform any competitive work. (Doc. 16, pg. 6) (Tr. 63-64).

As part of step four of the sequential evaluation process, the administrative law judge must determine the claimant's residual functional capacity. Id. Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475. A regular and continuing basis contemplates full-time employment and is defined as eight hours

a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

The ALJ determined that Fitzherbert has the residual functional capacity to perform less than the full range of sedentary work.[2] (Tr. 19-24). Specifically, the ALJ found that Fitzherbert is capable of performing sedentary work with a sit/ stand option at will, with the limitations previously listed. (Tr. 24). The vocational expert stated that if the hypothetical individual missed work three to four times per month due to pain and swelling in the left lower extremity and due to fatigue from medications, such an individual would no be able to perform any competitive work in the economy. (Doc. 16, pg. 6) (Tr. 64). The vocational expert also testified that if the hypothetical individual would not respond appropriately to work pressures in a usual work setting, such an individual would not be able to perform any of the suggested jobs. (Doc. 16, pg. 6) (Tr. 66). The Magistrate Judge stated that no evidence supports Fitzherbert's argument that he has an inability to respond appropriately to work pressures in a usual work setting, rather he only has a "moderate" restriction responding to work pressures. (Doc. 15, pg. 22); (Tr. 320). The hypothetical questions contained

---

2. Sedentary work is defined in the Social Security regulations as follows:

> (a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567 and 416.967.

Fitzherbert's limitations as supported by the evidence of record. Accordingly, substantial evidence supports the ALJ's determination that Fitzherbert is capable of performing a limited range of sedentary work.

**Conclusion**

Based on the foregoing, the Magistrate Judge's Report and Recommendation will be adopted. An appropriate order follows.

**Date:** November 8, 2012

_____
**United States District Judge**